UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| JAMES HARRY FRANCK, | ) | Civil No.07cv846-J (NLS) |
| | ) | |
| Petitioner, | ) | **REPORT AND RECOMMENDATION** |
| v. | ) | **OF U.S. MAGISTRATE JUDGE RE:** |
| | ) | **FIRST AMENDED PETITION FOR** |
| SUZAN L. HUBBARD, Warden, | ) | **WRIT OF HABEAS CORPUS** |
| | ) | |
| Respondent. | ) | |
| | ) | |

James Harry Franck ("Petitioner") is a California prisoner serving a thirteen year sentence for residential burglary, being under the in fluence of cocaine, and resisting an officer. He has filed a First Amended Petition for Writ of Habeas Corpus [Doc. No. 12] pursuant to 28 U.S.C. § 2254, arguing the trial court violated his First Amendment right to free speech when it prohibited him from addressing the court subsequent to closing arguments at his trial. Respondent filed an answer to the petition and supporting documents [Doc. No. 14]. Petitioner did not file a traverse. After a thorough review, the Court finds that Petitioner is not entitled to the relief requested, and **RECOMMENDS** that his petition be **DENIED**.

/ / /

/ / /

/ / /

/ / /

/ / /

1

# BACKGROUND

The following statement of facts is taken from the appellate court opinion denying Petitioner's direct appeal. This Court gives deference to state court findings of fact. *Sumner v. Mata*, 449 U.S. 539, 545-47 (1981) (stating that deference is owed to factual findings of both state trial and appellate courts).

"At about 3:30 p.m. on June 3, 2004, Franck broke into Todd Bradley's apartment when Bradley was not at home and stole a VCR, DVD player, and VHS cassettes. Bradley's neighbor, Alicia Ramos, heard breaking glass and saw Franck leave the apartment with two plastic trash bags. Ramos summoned the police. Before the police arrived, Franck obtained ice cream from an ice cream vendor on the street, and then went to an alley and showed the stolen items in the bags to a man in a truck. When the police arrived, Franck left the items on the tailgate of the man's vehicle and started walking slowly away. The police called out to him to stop and return for questioning. At first Franck ignored their commands, but eventually he turned and walked back to the police. Franck was detained and then arrested.

Franck had broken through a sliding glass door to gain entry into Bradley's apartment. A brick from Bradley's yard was found on the floor in the apartment. Holes in the sliding screen and glass doors suggested that Franck threw the brick through the screen and the glass door, and then reached his hand in and unlocked the glass door. At the time of this arrest, Franck had no blood, cuts, or scratches on his arms.

Blood tests showed that Franck tested positive for cocaine and methamphetamine use. Neighbor Ramos noticed that Franck was staggering as he was carrying the heavy bags away from the apartment, and when she saw his face it appeared that he was either very drunk or under the influence of drugs. The police ascertained that he was under the influence of drugs and alcohol based on his alcoholic smell, bloodshot eyes, dilated pupils, fluttering eyelids, dry mouth, rapid pulse, and profuse sweating. He appeared paranoid; he was constantly looking around, acting nervous and fidgety, and asking the same questions over and over. At one point he asked if he was "going to prison" or "going to hell." However, the police did not observe him staggering or having any other problems walking, and he appeared aware of his surroundings. He spoke coherently, responsively, and without slurring his words.

Franck was initially cooperative with the police, but after he was arrested his behavior became out of control and irrational. When he was in the police car, he was yelling and cussing, hitting the protective cage with his shoulder or head and kicking the car door, windows, and roof. Failing to heed police warnings to stop, the police pepper-sprayed him and tied his feet. Because was telling police to kill him, the police eventually took him to a county mental health facility. At county mental health, Franck told the police that he had consumed seven 24-ounce malt liquor beers. He told the police that he had told them to kill him because he was upset about being arrested. After a county mental health evaluation, Franck was released back into prison custody.

Based on Franck's blood test results, toxicologist Dale Somers opined that Franck had taken drugs many hours earlier and that the effects were wearing off. In Somers' view, the cocaine in Franck's system had broken down to such a degree that it would not have interfered with his functioning other than making him feel tired, and the methamphetamine in his system would cause some impairment but would not

> cause extreme distortions of time or judgment. [footnote omitted] On cross-examination, Somers acknowledged that the use of cocaine, methamphetamine, and alcohol in combination could seriously impair a person's ability to be rational and logical.
>
> Rejecting Franck's voluntary intoxication defense, the jury found him guilty of residential burglary. It also found him guilty of the misdemeanors being under the influence and resisting an officer. Franck admitted [a] prior prison term, serious felony, and strike allegations, and was sentenced to 13 years in prison."

[*Lodgment No. 3*, *People v. Franck*, No. D045831, slip op. at 2-4 (Cal.Ct.App. October 14, 2005.).]

The jury found Petitioner guilty of residential burglary (Cal.Penal Code § 459, 460), being under the influence of cocaine (Cal.Health and Safety Code § 11550(a)), and resisting an officer (Cal.Penal Code § 148 (a)(1)), after which the trial court sentenced him to a thirteen year term of incarceration. [*Lodgment No. 1*, 61-63; 9.]

Petitioner filed a direct appeal in the California Court of Appeal, Fourth Appellate District, Division One. [*Lodgment No. 8*.] Petitioner raised two claims before the appellate court. First, Petitioner challenged the sufficiency of the evidence to support his burglary conviction, arguing that because of his intoxication he lacked the specific intent to commit theft. Petitioner also claimed that the trial court abused its discretion during sentencing in refusing to dismiss his strike prior under the Three Strikes law. On October 14, 2005, the appellate court rejected his claims and affirmed Petitioner's convictions and sentence. [*Lodgment No. 11*, 5-10.] Petitioner did not seek direct review by the California Supreme Court.

On March 15, 2006, Petitioner, proceeding *pro se*, filed a Petition For Writ of Habeas Corpus in the San Diego Superior Court. [*See Lodgment No. 12*.] Petitioner raised four claims for relief: (1) ineffective assistance of trial counsel for failing to use a defense of alcohol and drug-induced temporary insanity or psychosis; (2) violation of his First Amendment right to free speech when he was not allowed to address the court directly after the completion of closing arguments; (3) diminished capacity at the time of the offense because he was not taking his psychiatric medication and therefore was cognitively impaired; and (4) violation of his Eighth Amendment right to be free from cruel and unusual punishment based on the trial court's refusal to dismiss his prior strike conviction. [*Lodgment No. 12*, "Grounds for Relief," 3-4 with supplemental pages attached.] On May 4, 2006, the Superior Court denied the Petition in a written order. [*Lodgment No. 13*, 4.] On April 14, 2006, Petitioner filed an

identical habeas petition in the California Supreme Court, alleging the same four claims. On December 20, 2006, the California Supreme Court denied the Petition without comment. [*See Lodgment No. 15.*]

On May 9, 2007, Petitioner filed a federal petition alleging four grounds for relief: (1) violation of his Sixth Amendment right to counsel of his choice based on the trial court denying his motion for a Marsden hearing; (2) violation of his First and Sixth Amendment rights when he was refused the opportunity to address the court directly at the completion of closing arguments; (3) violation of his Fourteenth Amendment due process rights based on prosecutorial vindictiveness; and (4) trial court sentencing error under *Cunningham v. California*, 549 U.S. 270 (2007). [*See Lodgment No. 16*, "Grounds for Relief," 6-9 with supplemental pages attached.] Petitioner filed a motion to proceed *in forma pauperis* concurrently with his federal petition. The Court granted the motion, but stated that Petitioner failed to allege exhaustion for his *Cunningham* claim. (*See* Order filed May 17, 2007, Doc. No. 3, 2-4.) The Court instructed Petitioner regarding his options to proceed, given his failure to exhaust at least one of his four claims, and set a July 5, 2007, deadline for Petitioner to choose an option and file an appropriate pleading.[1] (*See id.*)

On July 5, 2007, Petitioner filed a "Petition to Motion to Procede [sic] in Forma Pauperis to Staying in Federal District and Getting a Favorable Decision in Supreme or Exhausting Remaining Claims Simultaneously" [Doc. No. 4], as well as a Notice of Lodgment in Support [Doc. No. 7]. The Court construed the motion as a request by Petitioner to stay and abey his petition in order to return to state court to exhaust his *Cunningham* claim, and ordered Respondent to file a response to the motion [Doc. No. 5]. Respondent filed a Motion to Dismiss [Doc. No. 8], arguing that Petitioner failed to exhaust all four of his claims properly, and thus his petition should be dismissed in its entirety. The undersigned prepared a Report and Recommendation [Doc. No. 9] for the presiding District Judge finding that Petitioner properly exhausted only his First Amendment free speech claim. Petitioner specifically pled his claim regarding the refusal to allow him to address the court directly during trial as a violation of the First Amendment in both of his state habeas petitions, thus he "fairly presented" the

---

[1] Petitioner was presented with the standard options given pursuant to *Rose v. Lundy*, 455 U.S. 509, 510, 520-21 (1982): (1) demonstrate exhaustion; (2) voluntarily dismiss the petition; (3) formally abandon his unexhausted claim; or (4) file a motion to stay the federal proceedings while he exhausts his claims in state court. (*See* Order filed May 17, 2007, at 2-4.)

issue to the California Supreme Court and the claim was properly exhausted. The undersigned further recommended his motion for a stay be denied based on his failure to demonstrate good cause for not exhausting his other three claims. Finally, the undersigned recommended that Respondent's motion to dismiss be granted, but that Petitioner be given an opportunity to file an amended petition deleting the unexhausted claims and presenting only his exhausted First Amendment claim.

On March 18, 2008, Judge Jones adopted the Report and Recommendation in its entirety [Doc. No. 11]. On May 1, 2008, Petitioner filed his first amended petition, in which he states only one ground for relief, his First Amendment claim, as directed by the Court's prior order. [*First Amended Petition*, Doc. No. 12, 6]. Respondent filed an answer on May 29, 2008, arguing that Petitioner had no constitutional right to address the court personally after his trial counsel's closing argument, and thus his claim should be denied. [Doc. No. 14].

## **LEGAL STANDARD**

This Petition is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *See Lindh v. Murphy*, 521 U.S. 320 (1997). Under AEDPA, a habeas petition will not be granted with respect to any claim adjudicated on the merits by the state court unless that adjudication: (1) resulted in a decision that was contrary to, or involved an unreasonable application of clearly established federal law; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented at the state court proceeding. 28 U.S.C. § 2254(d); *Early v. Packer*, 537 U.S. 3, 8 (2002). A federal habeas court may grant relief under the "contrary to" clause if the state court applied a rule different from the governing law set forth in Supreme Court cases, or if it decided a case differently than the Supreme Court on a set of materially indistinguishable facts. *Bell v. Cone*, 535 U.S. 685, 694 (2002). The court may grant relief under the "unreasonable application" clause if the state court correctly identified the governing legal principle from Supreme Court decisions but unreasonably applied those decisions to the facts of a particular case. *Id.* Additionally, the state court's factual determinations are presumed correct, and the petitioner carries the burden of rebutting this presumption with "clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

/ / /

/ / /

## ANALYSIS

Petitioner asserts one ground for relief in his first amended petition. Specifically, Petitioner claims that his First Amendment right to free speech was violated when he was not permitted to address the court directly after the completion of closing arguments at his trial. [*First Amended Petition*, "Grounds for Relief," 6 with supplemental pages attached.] In support of his claim, Petitioner states that at the time of his arrest, he had $40 in his pocket and a brand new walkman for $20 that he could have sold for money; but his trial counsel refused to present these facts to the jury in defense of the intent element of the burglary charge, and therefore Petitioner tried to address the court after closing arguments to explain those facts as his last "hope." [*Id.*] Because he was denied the opportunity to speak directly to the court, Petitioner claims a violation of his First Amendment right to free speech.

As mentioned previously, Petitioner asserted this claim in his state habeas petition before the California Supreme Court. *See Johnson v. Zenon*, 88 F.3d 828, 829 (9th Cir. 1996) (explaining that a habeas petitioner has satisfied the exhaustion requirement if the federal claim was presented to the highest state court with jurisdiction to consider it). The high court denied the petition without comment. [*See Lodgment No.* 15.] Therefore, this Court is required to "look through" the high court's summary order to the last reasoned state court opinion. *See Medina v. Hornung*, 386 F.3d 872, 877 (9th Cir. 2004). The state superior court's order denying his petition is the last reasoned state court decision. In denying the claim, the court stated:

> "Here, Petitioner states his counsel was ineffective for: not presenting proof to the jury that he possessed money when arrested, which would have proven he did not commit the crime for money; not allowing him to testify at trial; and admitting his guilt to the jury. However, as stated above, Petitioner has attached no evidence to his petition supporting any of his claims. A petitioner's unsubstantiated, self-serving statements do not provide a sufficient basis upon which to prove his claims. [citation omitted.] Petitioner has also not made any showing he suffered prejudice as a result of her [sic] trial counsel's alleged ineffective assistance, and has not shown that a reasonable probability exists that, but for his trial counsel's failing, the result of his case would have been more favorable to him. Accordingly, this Court need not reach the issue of whether Petitioner's counsel's assistance fell outside the range of reasonable professional assistance."

[*Lodgment No. 13*, 3-4.]

/ / /

/ / /

In his state petitions, Petitioner presented an ineffective assistance of counsel claim with respect to his trial counsel's failure to put on a psychiatric defense at trial. [*Lodgment No. 12*, 3.] With respect to his complaint about not being allowed to address the court after closing arguments, Petitioner presented this claim as a violation of his First Amendment rights only; he did not reference the Sixth Amendment, nor cite to any case law, state or federal, supporting a Sixth Amendment violation in support of the claim. [*Lodgment No. 12*, 4.] Irrespective of this, the state superior court subsumed Petitioner's claim into a Sixth Amendment ineffective assistance of counsel claim, as applied to the state through the Fourteenth Amendment, and did not address the claim within the context of Petitioner's First Amendment right to free speech. It was not until Petitioner filed his original federal petition that he presented this claim and the underlying facts as a violation of *both* his First and Sixth Amendment rights. [*Lodgment No. 16*, 7.] The underlying facts in his federal petition were the same as those that he presented to the state courts in support of his claim when he cast it only as a First Amendment violation.

In ruling that only Petitioner's First Amendment claim had been exhausted properly, this Court held that Petitioner specifically pled his claim before the state courts as a violation of the First Amendment, thus Petitioner had "fairly presented" the First Amendment claim to the California Supreme Court. (*See District Court's March 18, 2008 Order Adopting Report and Recommendation*, Doc. No. 11, 8-9.) When Petitioner filed his first amended petition with this Court, he abandoned his unexhausted claims and presented his claim solely as a First Amendment claim. [*First Amended Petition*, "Grounds for Relief," 6.] Although the state superior court treated the First Amendment claim as a part of Petitioner's Sixth Amendment claim of ineffective assistance of counsel, the Sixth Amendment claim was not fairly presented by Petitioner in his state petition to the California supreme court. As such, a unique situation results in which the last reasoned state court decision fails to address Petitioner's sole remaining claim in federal court, his First Amendment claim. As there is no state decision on the merits of this claim, this Court reviews it de novo. *Pirtle v. Morgan*, 313 F.3d 1160, 1167 (9th Cir. 2002).[2] Thus, the Court must independently determine whether Petitioner's first

---

[2] The *Pirtle* court explained that when there is "no state court decision on an issue to which to accord deference,". . . "concerns about comity and federalism that arise when a state court reaches the merits of a petition for post-conviction relief do not exist. [citation omitted.] Accordingly, following our sister circuits – the Third and the Fifth – we hold that when it is clear that a state court has not reached the merits of a properly raised issue, we must review it de novo. [footnote omitted.] *See Appel v. Horn*, 250 F.3d 203, 210 (3d Cir. 2001) (holding

1 amendment rights were violated at the close of his trial.

2     Turning to a review of the record, the pertinent portion of the trial transcript indicates that
3 subsequent to the prosecution's closing argument, the court ordered a ten minute recess and then
4 resumed, with Petitioner, both attorneys, and all members of the jury present in the courtroom.
5 [*Lodgment No. 4*, Reporter's Appeal Transcript ("RT" hereafter), 237.]  Petitioner's trial attorney then
6 addressed the jury for purposes of the defense's summation and closing argument.  [AR at 237-45.]  The
7 prosecutor made his final rebuttal arguments.  Immediately thereafter, Petitioner queried of the court:

8     [Petitioner]
9     Q:    Your Honor, may I address the Court, please?
10     [The Court]
11     A:    No, I'm afraid you can't, Sir.
12     Q:    I can't?
13     A:    There is not the time.
14     Q:    On my own behalf?
15     A:    I'm afraid not, Sir.  You guys talk for a minute.
16     [Attorney-Client Discussion Held Off the Record]
17 [AR at 249.]
18 The above exchange provides the factual basis for Petitioner's claim.

19     "Clearly established federal law" with respect to an accused's rights during his criminal trial is
20 far too voluminous to recount here.  Federal jurisprudence repeatedly has upheld the protections
21 guaranteed to all criminal defendants by the Bill of Rights, and has established without deviation that
22 those protections extend to state court proceedings via the Fourteenth Amendment.  An accused enjoys
23 multiple constitutional rights during the course of his trial.  First and foremost, the Fifth Amendment
24 provides that a defendant cannot "be compelled in any criminal case to be a witness against himself."
25 *See* U.S. Const. amend. V.  The Fifth Amendment also guarantees the right not to be subjected to
26 prosecution for the same offense to "be twice put in jeopardy of life or limb."  *id.*  The "confrontation

27
28 that a federal habeas court must review de novo purely legal issues and mixed questions of law and fact when, "although properly preserved by the defendant, the state court has not reached the merits of a claim thereafter presented to a federal habeas court")."

clause" of the Sixth Amendment gives defendants the right to confront witnesses against them. *See* U.S. Const. amend. VI. The Sixth Amendment also guarantees the right to a public trial, the right to be tried by a jury of peers in most cases, the right to a speedy trial, and the right to effective assistance of counsel for one's defense.[3]

The instant case is peculiar, in that Petitioner's single claim remaining before the Court invokes none of the protections mentioned above, and instead is based on the First Amendment guarantee of freedom of speech. Respondent argues that Petitioner, who was represented by counsel throughout the entire proceeding, had no constitutional right to address the court after final closing arguments because he was represented by competent counsel who provided a summation and closing argument on Petitioner's behalf. [*Answer*, 7.] Respondent informs the Court that she was not able to find any authority to support Petitioner's contention that he has an independent First Amendment right to speak to the court directly during his trial. [*Id.*]

The Court now turns to its analysis of Petitioner's claim within the context of the clearly established federal law regarding the First Amendment. The First Amendment provides: "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances." U.S. Const. amend. I. There is no doubt that, as a general matter, speaking in a courtroom in front of a judge and jury is an expressive activity. The pertinent question in this case is whether a criminal defendant's "speech" in that environment is protected by the First Amendment, and if so, to what extent.

In order to determine whether Petitioner can succeed on the merits of his First Amendment claim, the Court must begin its inquiry by determining the nature of the relevant forum, in this case, the courtroom in which his trial was held at the San Diego County Superior Courthouse. Courtrooms, although accessible by the public, are not areas that traditionally have been made available for public

---

[3] Specifically considering a defendant's Sixth Amendment rights as they apply to closing arguments before a court, the most closely related situation to the case at bar, the Supreme Court has held that a denial of an opportunity to make a closing argument violates a criminal defendant's constitutional rights. *Herring v. New York*, 422 U.S. 853, 862 (1975) (holding that statute authorizing trial judge in non-jury criminal case to refuse to hear defense closing argument violated the Sixth Amendment); *see also United States v. Mack*, 362 F.3d 597, 602 (9th Cir. 2004) ( "It can hardly be doubted that a defendant has a right to a closing argument." ).

assembly, debate, or speech. Nor is the primary purpose of a courtroom to provide a platform for members of the public to espouse their views. The purpose, rather, is the impartial and efficient administration of justice under the law. Given the traditional function of courtrooms, the Court concludes that the courtroom which hosted Petitioner's trial is a non-public forum.[4]

In a non-public forum, the government can control expression so long as the regulations used to do so are reasonable in light of the purpose served by the forum, and are viewpoint neutral. *Cornelius v. NAACP Legal Defense & Educ. Fund, Inc.*, 473 U.S. 788, 806 (1985). The government is not required to choose the least restrictive alternative, it need only choose one that reasonably fulfills a legitimate and demonstrated need. *Swarner v. United States*, 937 F.2d 1478, 1482-83 (9th Cir. 1991). Regulation on speech in a courtroom during a trial, even by a criminal defendant himself, is not an unreasonable means to ensure the legitimate interest of ensuring the efficient and fair administration of justice, certainly a legitimate governmental goal. Clearly established Supreme Court law confirms this. In *Sheppard v. Maxwell*, 384 U.S. 333, 363 (1966), the court noted that "Neither prosecutors, counsel for defense, *the accused*, witnesses, court staff nor enforcement officers coming under the jurisdiction of the court should be permitted to frustrate its function." (emphasis added.) The Supreme Court has fleshed out this view of the First Amendment in the courtroom as it applies to counsel. In *Gentile v. State Bar of Nevada*, 501 U.S. 1030, 111 S.Ct. 2720, 2743 (1991), the court stated as dicta: "[i]t is unquestionable that in the courtroom itself, during a judicial proceeding, whatever right to 'free speech' an attorney has is extremely circumscribed. An attorney may not, by speech or other conduct, resist a ruling of the trial court beyond the point necessary to preserve a claim for appeal."

A traditional First Amendment analysis supports the conclusion that all participants in a courtroom proceeding lack the First Amendment right to "speak freely" before the Court. Although courtrooms always have involved the most important kind of speech and debate, it does not follow that expression in the courtroom is without restraint. As mentioned previously, proceedings which take place in a courtroom, which presumably involve speech by attorneys, clients, witnesses, jurors, and court personnel, are presided over by a judge with the discretion to conduct and control the proceedings

---

[4] Other courts have addressed the issue of whether courthouses and/or their grounds constitute public fora. None have so found. *See, e.g., United States v. Grace*, 461 U.S. 171 (1983); *Sammartano v. First Judicial Dist. Court*, 303 F.3d 959, 966 (9th Cir. 2002).

1  and therein are fundamentally inconsistent with the basic concept of "free" speech.  Procedural rules,
2  evidentiary rules, and judicial discretion, operate to limit what anyone present at courtroom proceedings
3  may or may not say.  For example, witnesses may only speak when called to the stand, and then they are
4  allowed to speak only within the parameters of the questions they are asked by the court or counsel.  If a
5  witness strays outside of these confines, evidentiary objections by the attorneys and admonishments
6  from the court immediately restrict their speech.

7  Thus, having reviewed the record in this case de novo, as well as the clearly established
8  applicable federal law, the Court finds that the limitation placed on Petitioner's speech in the courtroom
9  during his trial was not unreasonable in light of the trial judge's legitimate goal of ensuring an efficient
10 and fair trial for a defendant represented by competent counsel throughout the entirety of the
11 proceedings.

12 Finally, even if the Court were to conclude that Petitioner held the First Amendment right to
13 speak freely and without restraint of any kind in the courtroom during his trial, and that the trial court
14 violated this right when it denied his request to speak after the completion of closing arguments, it is
15 worth noting that Petitioner ultimately was given the opportunity to express himself to the court prior to
16 his sentencing hearing, by way of a letter that he addressed and mailed directly to the trial judge.  The
17 following excerpt from the hearing transcript confirms this:

18  [The Court]
19  Q:   Any legal cause why sentencing should not be pronounced?
20  [Defense counsel]
21  A:   No your honor.  I also have a letter that my client is addressing to the
     court, but I'm letting the other parties read that.
22
23  Q:   I have one in my file that was written by Mr. Franck.  Is that the same
     letter?
24  A:   Actually, it's a new letter.
25  Q:   This one is filed with the court January 12th.
26  [The Defendant]
27  A:   I mailed it.
28  [Defense counsel]

|   |   |   |
|---|---|---|
| A: | | He mailed it. |
| [Prosecutor] | | |
| A: | | We're reading a letter dated November 15, 2004. |
| [The Court] | | |
| Q: | | This could be different than this one? |
| [Defense counsel, addressing his client] | | |
| Q: | | Are they essentially saying the same thing? |
| [The Defendant] | | |
| A: | | Essentially, yes. |
| [The Court] | | |
| A: | | Then I have a statement in mitigation filed by Mr. Miller and the probation officer's report, and of course I heard the trial in this matter. I read that letter. It came here a few days ago, I think. |

[AR at 265.]

Petitioner's expression of his feelings, concerns, apologies, and promises for the future, although regulated by the court, was by no means entirely prohibited, and in fact was given its due consideration by the court at the appropriate time and under the correct procedural circumstances.

Accordingly, the Court finds that Petitioner has failed to demonstrate that the trial court violated his First Amendment right to free speech during the course of his trial in light of clearly established federal law, and therefore **RECOMMENDS** that his petition be **DENIED**.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

### CONCLUSION

Based on the foregoing, this Court **RECOMMENDS** that the petition be **DENIED**. This Report and Recommendation is submitted by the undersigned Magistrate Judge to the United States District Judge assigned to this case, pursuant to the provision of Title 28, United States Code, section 636(b)(1).

**IT IS ORDERED** that no later than *September 5, 2008*, any party to this action may file written objection with the Court and serve a copy on all parties. The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties no later than *September 12, 2008*. The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

**IT IS SO ORDERED**.

DATED: August 5, 2008

Hon. Nita L. Stormes
U.S. Magistrate Judge